# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3720

_____

In re: Kent Miller,      *
In re: Terry J. McGavern,     *
       *
     Debtors,     *
       *
    _____     *   Appeal from the United States
       *   District Court for the
Ronald Owens, Margaret Owens,     *   Western District of Missouri.
Nicola Angelicola, Pasqualina     *
Angelicola, Ernest Waterman,     *
       *
     Appellees,     *
       *
     v.     *
       *
Kent Miller, Terry J. McGavern,     *
       *
     Appellants.     *

_____

Submitted: May 18, 2001

Filed:   January 10, 2002

_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and BARNES,[1] District
     Judge.

_____

[1]The Honorable Harry F. Barnes, District Judge, United States District Court
for the Western District of Arkansas, sitting by designation.

WOLLMAN, Chief Judge.

Kent W. Miller and Terry J. McGavern appeal from the district court's[2] order affirming the finding of the bankruptcy court[3] that certain debts were nondischargeable in Chapter 7 bankruptcy proceedings. We reverse and remand.

The appellees in this case are retirees from a steel mill in Utica, New York, and their spouses. They had never engaged in any complex investing, and none has more than a high school education. Upon their retirements in the late 1980s and early 1990s, the appellees received large lump-sum distributions from the steel mill's retirement plan, and all of them desired secure, income-producing investments to supplement their retirement income. The appellees took their money to Gary Bohling, at the time a vice president and registered representative of Andover Securities, Inc. (Andover), a securities brokerage firm incorporated in Missouri and licensed by the National Association of Securities Dealers (NASD). Ignoring the appellees' stated desires, Bohling invested their funds in several speculative, high risk investments, including limited partnerships, investment trusts, and private placement offerings of debt instruments in such businesses as a catfish farm, a medical office complex, and a highly leveraged credit company. Appellants do not dispute that these investments were inappropriate for these investors. The investments ultimately failed, resulting in the loss of most of the appellees' retirement savings.

To obtain appellees' consent to these investments, Bohling was required to engage in fraudulent conduct. First, he told them that the investments were safe, even better than social security. Also, since the investments were complicated and

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[3]The Honorable Frank W. Koger, United States Bankruptcy Judge for the Western District of Missouri.

relatively risky, Bohling had to manipulate his way around various restrictions. At least one of the investments required investors to be "accredited," that is, they must have had a net worth of more than $1 million or two years of income of more than $200,000. Because none of the appellees met these requirements, Bohling falsified their subscription documents by inflating the value of their homes and possessions and by capitalizing their potential social security income as a current asset. Further, Bohling identified the appellees' investment objectives on their investment subscription forms as "speculation." The documents prepared by Bohling contained various other internal inconsistencies.

During the time Bohling managed the appellees' investments, Miller was Chairman of the Board of Andover Securities and McGavern was President and CEO. Neither Miller nor McGavern made any fraudulent statements directly to the appellees. Miller, however, was responsible for reviewing all documents Bohling submitted for the appellees' investments. Bohling testified that McGavern first suggested that he inflate investors' assets in order to make them appear accredited. Bohling also testified that he discussed capitalizing social security with Miller and McGavern. Miller and McGavern also suggested that Bohling indicate that all his clients' goals were speculation, thus purporting to limit the company's liability if the investments failed. Over the years, Bohling's practices in these areas became more blatant. Miller testified that he "missed some inconsistencies and red flags in the documents," and McGavern admitted that "he may have conveyed the impression to his brokers that it was permissible to sell unaccredited investors 'a little bit' of the higher risk investments, regardless of the client's stated investment objectives." In January 1992, after a client filed a claim against Andover Securities based on Bohling's management of her account, Miller and McGavern sent Bohling a letter requiring him to limit his sales to lower-risk investments or ones that were preapproved by Andover. This letter also specifically identified the investment in which the appellees lost the most money as one that did not fit most clients' risk tolerances. Nevertheless, Bohling continued to sell the risky investments, and the

documents he submitted to Andover plainly showed those sales. In February 1993, the *Wall Street Journal* published an article reporting that the SEC was alleging that 26 of Bohling's customers had used incorrect statements of their assets and had capitalized social security benefits on their investment subscription forms. Despite the various indications that Bohling was engaged in fraud, Miller and McGavern allowed him to continue in the same practices until his voluntary termination of employment in March of 1993.

In summary, the evidence before the bankruptcy court established that Bohling engaged in clear violations of the securities laws throughout the entire period in which he managed the appellees' investments and that Miller and McGavern knew or should have known about those violations but did nothing to stop him, with the result that the appellees' lost nearly all of their savings.

When Bohling subsequently filed for bankruptcy protection under Chapter 11, the appellees accepted $12,000 as an administrative priority claim and agreed not to sue Bohling for the balance of their loss in exchange for his cooperation in proceedings against Andover. The appellees then filed a statement of claim with the NASD, asserting violations of the Securities Exchange Act, breach of fiduciary duty, and common law fraud against Andover, Miller, and McGavern.

On June 20, 1997, NASD-appointed arbitrators entered an award against Andover, Miller, and McGavern, finding them jointly and severally liable to the appellees for $226,000, plus 9% interest. The arbitrators did not specify the grounds for the award, however, nor did they make explicit factual findings. The arbitration award was later confirmed by the United States District Court for the Northern District of New York. Owens v. Andover Sec., Inc., No. 97-CV-1244, 1998 WL 52058 (N.D.N.Y. Jan. 30, 1998).

Miller and McGavern filed voluntary petitions for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code on May 8, 1998, and December 14, 1998, respectively. Both listed as dischargeable debts the amounts awarded to the appellees in the NASD arbitration. In response, the appellees filed an adversary action, contending that the debts in question were nondischargeable under 11 U.S.C. § 523(a)(2)(A).[4]

Because the precise grounds for the NASD award were uncertain, the bankruptcy court determined that nondischargeability under the Bankruptcy Code could not necessarily be implied from the nature of the debt. The court further concluded, however, (1) that Bohling's conduct constituted fraud within the meaning of § 523(a)(2)(A); (2) that Bohling's conduct violated § 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder;[5]

---

[4]11 U.S.C. § 523(a)(2)(A) provides, in pertinent part:

(a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge any individual debtor from any debt–
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

[5]Rule 10b- 5, which implements 15 U.S.C. § 78j, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce . . .
   (a) To employ any device, scheme, or artifice to defraud,
   (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) that pursuant to § 20 of the Act, 15 U.S.C. § 78t(a),[6] Miller and McGavern, as controlling persons, were jointly and severally liable for Bohling's fraud to the same extent that Bohling was liable, and (4) that Miller and McGavern were ineligible for the "good faith" exception of § 20(a) because they were negligent in their supervision of Bohling. In short, the bankruptcy court concluded that § 20(a) created an "agency-like relationship" sufficient to impute Bohling's fraud to Miller and McGavern and therefore concluded that the debt in question was nondischargeable under § 523(a)(2)(A). Owens v. Miller, 240 B.R. 566 (Bankr. W.D. Mo. 1999).

Following the district court's affirmance of the bankruptcy court's decision, Miller and McGavern filed this appeal. Our jurisdiction is based on 28 U.S.C. § 158(a), and we sit as a second court of review in this matter, applying the same standard as the district court. Cedar Shore Resort, Inc. v. Mueller, 235 F.3d 375, 379 (8th Cir. 2000). That is, we review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Id.

-------

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "The essential components of a Rule 10b-5 claim are scienter, causation, and damages," and the purpose of the rule is to "transcend the gaps and limits of the common law actions available to securities traders injured by false representations or failures to disclose." Arthur Young & Co. v. Reves, 937 F.2d 1310, 1327 (8th Cir. 1991).

[6]15 U.S.C. § 78t(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person."

We conclude that the bankruptcy court erred by imputing Bohling's fraud to Miller and McGavern by way of § 20(a).

The United States Court of Appeals for the Eleventh Circuit recently addressed the same question confronting us in this case. Hoffend v. Villa, 261 F.3d 1148 (11th Cir. 2001). The Hoffend court considered the bankruptcy court's reasoning in this case, and rejected it. Id. at 1154. Although we are not bound by the Hoffend court's decision, "we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket." United States v. Auginash, 266 F.3d 781, 784 (8th Cir. 2001) (quoting Aldens, Inc. v. Miller, 610 F.2d 538, 541 (8th Cir. 1979).

The United States Supreme Court has recognized that a debt may be nondischargeable when the debtor personally commits fraud or when actual fraud is imputed to the debtor under agency principles. Strang v. Bradner, 114 U.S. 555, 561 (1885). Strang specifically relied on the common law of agency and partnership to impute the fraud of an innocent debtor's business partner to that debtor and so render his debt nondischargeable. Id. The bankruptcy court determined that, like common law agency principles, § 20(a) of the Securities Exchange Act of 1934 renders an innocent person's debt nondischargeable when a person over whom the innocent person exercised control committed actual fraud.

We are mindful of our duty to construe exceptions to discharge narrowly in order to effect the fresh start policy of the Bankruptcy Code. See Geiger v. Kawaauhau, 113 F.3d 848, 853 (8th Cir. 1997), *aff'd* 523 U.S. 57 (1998); Hoffend, 261 F.3d at 1152. We agree with the Eleventh Circuit that Strang should not be extended beyond its basis in agency law to include the much broader sweep of § 20(a) liability. Hoffend, 261 F.3d at 1153.

We see nothing in the Bankruptcy Code or the securities laws indicating that these two separate provisions of law should be combined in the manner the bankruptcy court did. Section 523(a)(2)(A) of the Bankruptcy Code prevents persons from committing actual fraud and then wiping away their resulting debt. It also provides other specific exceptions to discharge, which do not include an exception for liability under the securities laws. Section 20(a) of the Securities Exchange Act of 1934, on the other hand, is designed to ensure that securities brokers act properly and supervise their employees, and, therefore, it imposes liability in those cases in which the supervisor did not directly participate in the bad acts. See Metge v. Baehler, 762 F2d 621, 631 (8th Cir. 1985). Section 20(a) extends liability well beyond traditional doctrines, providing expansive remedies in a highly regulated industry. Section 523 of the Bankruptcy Code addresses actual, traditional fraud, and we are not persuaded that it should be read in such a way as to encompass the nontraditional liability imposed under § 20(a). Like the Eleventh Circuit, we believe that the extension of § 20(a) liability to § 523 of the Bankruptcy Code should come from Congress and not the judiciary. See Hoffend, 261 F.3d at 1154.

The judgment is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

BEAM, Circuit Judge, dissenting.

I would affirm the decision of the lower courts that certain debts were nondischargeable in Chapter 7 bankruptcy proceedings.

As set forth by the court, the evidence before the bankruptcy court established that Bohling engaged in clear violations of the securities laws throughout the entire period in which he managed the appellees' investments and that Miller and

McGavern knew or should have known about those violations but did nothing to stop him, with the result that the appellees' lost nearly all of their savings.

When Bohling subsequently filed for bankruptcy protection under Chapter 11, the appellees accepted $12,000 as an administrative priority claim and agreed not to sue Bohling for the balance of their loss in exchange for his cooperation in proceedings against Andover. The appellees then filed a statement of claim with the NASD, asserting violations of the Securities Exchange Act, breach of fiduciary duty, and common law fraud against Andover, Miller, and McGavern. On June 20, 1997, NASD-appointed arbitrators entered an award against Andover, Miller, and McGavern, finding them jointly and severally liable to the appellees for $226,000, plus nine percent interest. The arbitration award was later confirmed by the United States District Court for the Northern District of New York. Owens v. Andover Sec., Inc., No. 97-CV-1244, 1998 WL 52058 (N.D.N.Y. Jan. 30, 1998).

Miller and McGavern filed voluntary petitions for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code on May 8, 1998, and December 14, 1998, respectively. Both listed as dischargeable debts the amounts awarded to the appellees in the NASD arbitration. In response, the appellees filed an adversary action, contending that the debts in question were nondischargeable under 11 U.S.C. § 523(a)(2)(A).[7] The bankruptcy court concluded that § 20(a) created an "agency-like

---

[7]11 U.S.C. § 523(a)(2)(A) provides, in pertinent part:

(a) A discharge under sections 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge any individual debtor from any debt–
      (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

relationship" sufficient to impute Bohling's fraud to Miller and McGavern and therefore concluded that the debt in question was nondischargeable under § 523(a)(2)(A). Owens v. Miller, 240 B.R. 566, 579 (Bankr. W.D. Mo. 1999).

I conclude that the bankruptcy court did not err by imputing Bohling's fraud to Miller and McGavern by way of § 20(a) of the Securities Exchange Act. The court's determination that Bohling's conduct constituted fraud within the meaning of both 11 U.S.C. § 523(a)(2)(A) and Rule 10b-5 is well supported. Thus, there is no question but that Bohling's individual debt to the appellees would be nondischargeable. The bankruptcy court also correctly held that Miller and McGavern were "control persons" and therefore, pursuant to § 20(a), were jointly and severally liable to the same extent as Bohling. Accordingly, the bankruptcy court did not err in concluding that the debts in question are nondischargeable under 11 U.S.C. § 523(a)(2)(A).

I recognize that the Eleventh Circuit has recently disagreed with the bankruptcy court's analysis. See Hoffend v. Villa, 261 F.3d 1148 (11th Cir. 2001). The Eleventh Circuit emphasized that exceptions to discharge should be construed strictly, id. at 1149, 1152, a statement with which I agree. See Geiger v. Kawaauhau, 113 F.3d 848, 853 (8th Cir. 1997), aff'd, 523 U.S. 57 (1998). The Eleventh Circuit focused its analysis on Strang v. Bradner, 114 U.S. 555 (1885) and its progeny. The Court held in Strang that the fraud of one partner would be imputed to an innocent partner, and thus the innocent partner could not discharge his debt. Id. at 561. The Eleventh Circuit concluded that because the common law of agency and partnership, on which Strang was decided, and liability under § 20(a) of the Securities Exchange Act are not coextensive, the holding of Strang should not be expanded to include the liability imposed under § 20(a). Miller and McGavern similarly argue that an agency-principal relationship is necessary to impute fraud for the purposes of dischargeability.

I believe, however, that the Eleventh Circuit incorrectly limited its analysis to Strang and its progeny. The fact that Miller and McGavern cannot be liable under common law agency principles does not necessarily mean that they may not be liable under § 20(a). The bankruptcy court applied § 20(a) to supplement common law agency principles, an approach that I observe finds some support in our precedents. See, e.g., Commerford v. Olson, 794 F.2d 1319, 1323 (8th Cir. 1986) ("There is no basis for believing that '[§] 20(a) was intended to narrow the remedies of customers of brokerage houses . . .. On the contrary [§] 28(a), 15 U.S.C. § 78bb, specifically enacts that the rights and remedies provided by the [19]34 Act shall be in addition to any and all rights and remedies that may exist at law or in equity.'") (alterations in original) (quoting Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 716 (2d Cir. 1980)). Thus, I respectfully disagree with the court and with the Eleventh Circuit's holding in Hoffend because the opinions do not take § 20(a) on its own terms, independent of agency law. Strang, decided nearly a half-century before the enactment of the Securities Exchange Act, should not be read to control the reach of the Act. It must be remembered that § 20(a) is a remedial statute and thus is to be construed liberally. Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 880 (7th Cir. 1992). The statute's language is straightforward: control persons are liable to the same extent as the persons they control. Here, an aspect of Bohling's liability is that his debt to the appellees would be nondischargeable. Section 20(a) extends that aspect of Bohling's liability to Miller and McGavern as control persons, along with all other features of his liability.

Although I agree that exceptions to discharge should come from Congress and not the courts, Hoffend, 261 F.3d at 1154, Congress created an exception from discharge for fraud in § 523(a)(2)(A), and Strang tells us that the fraud need not have been perpetrated by the debtor in order to be nondischargeable. Strang, 114 U.S. at 561. The question before us is whether the statutory liability of control persons under § 20(a) also includes nondischargeability under the Bankruptcy Code. I conclude that it does.

I note that § 20(a) contains a good faith exception to control person liability. In this case, however, there is ample evidence to support the bankruptcy court's finding that Miller and McGavern were negligent in their supervision of Bohling (perhaps even to the extent that common law agency principles extend liability) and are thus not entitled to benefit from the good faith exception.

I conclude that the remainder of Miller and McGavern's arguments are without merit.

I would affirm the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.