## STRANG & Another *v.* BRADNER & Another.

IN ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

Argued April 13, 1885.—Decided May 4, 1885.

The rule re-affirmed that the term "fraud," in the clause defining the debts from which a bankrupt is not relieved by a discharge under the bankrupt act, means positive fraud or fraud in fact, involving moral turpitude or intentional wrong, not implied fraud, which may exist without bad faith.

A claim against a bankrupt for damages on account of fraud or deceit practised by him, is not discharged by proceedings in bankruptcy; nor is a debt, created by his fraud, discharged. even where it was proved against his estate, and a dividend thereon received on account.

If, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons dealing with him, as representing the firm, and without notice of any limitations upon his general authority as agent for the partnership, his partners cannot escape pecuniary responsibility therefor upon

the ground that the misrepresentations were made without their knowledge ; especially where the firm appropriates the fruits of the fraudulent conduct of such partner.

This action was commenced by defendants in error as plaintiffs in a court of the State of New York, to recover of the plaintiffs in error a sum which they alleged they had been compelled to pay, through false and fraudulent representations of one of the members of a partnership, consisting of the defendants, made in the course of partnership business. The defendants set up a discharge in bankruptcy. Judgment for the plaintiffs, which was affirmed by the Supreme Court, and the judgment of that court affirmed by the Court of Appeals. The case was remitted by the Court of Appeals to the Supreme Court when the final judgment was entered, which the defendants below, as plaintiffs in error, sued out this writ of error to review. The federal question involved was, the effect of the certificate of discharge in bankruptcy. The facts which raise the question are stated in the opinion of the court.

*Mr. George H. Forster* for plaintiffs in error.

*Mr. William F. Coggswell* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

On the first day of June, 1877, each of the appellants, who were defendants below, received from the District Court of the United States for the Southern District of New York his discharge from all debts and demands which by the Revised Statutes of the United States, Title Bankruptcy, were made provable against his estate, and which existed on the 3d day of July, 1875—other than such debts as were by law excepted from the operation of a discharge in bankruptcy. The statute excepts from the operation of a discharge any "debt created by the fraud or embezzlement of the bankrupt, or by defalcation as a public officer, or while acting in a fiduciary capacity ; but the debt may be proved, and the dividend thereon shall be a payment on account of such debt." Rev. Stat. § 5,117. To this action, brought by appellees against appellants upon a

cause of action accruing prior to July 3, 1875, the latter made defence, in part, upon the ground that their respective discharges in bankruptcy relieved them from all liability to plaintiffs. In the Supreme Court of New York there was a verdict and judgment in favor of the plaintiffs for the sum of $17,517.86. That judgment having been affirmed in the Court of Appeals, the question to be determined upon this writ of error is, whether the claim or demand of the plaintiffs is one from which they were relieved by their discharges in bankruptcy. If the debt was of that character, the judgment below must be reversed; otherwise, affirmed.

The evidence before the jury tended to establish the following facts: That for some years prior to June, 1875, the plaintiffs were doing business in the city of Rochester, New York, as partners, under the style of Lowrey & Bradner, while, during the same period, the defendants were engaged in business in the City of New York, under the style of Strang & Holland Bros.; that the special business of plaintiffs was the purchase of wool, which they forwarded to the defendants, as commission merchants, to sell on account; that plaintiffs, for the accommodation of defendants, often furnished them with promissory notes, for the purpose of enabling them to carry on business; that the defendants took care of these notes, paying the same at maturity out of the proceeds of the property consigned, and with money remitted by the plaintiffs; that in the transactions between the parties the plaintiffs were credited with those notes, with the proceeds of property sold on their account, and with money remitted by them, and were charged with the amounts paid to take up the notes; that on or about March 1, 1875, the defendants requested the plaintiffs to furnish them with four promissory notes, for about $4,000 each, to enable them to raise money thereon, and to be credited to plaintiffs on their account, in accordance with the course of business existing between the parties—such notes to be of odd amounts and made as of different dates before the time they were transmitted to the defendants, so that they might appear to be given for real indebtedness; that, pursuant to that request, the plaintiffs made and transmitted to defendants their four promissory

notes, for $4,325.50, $4,326.25, $4,327.13, and $4,327.15, each at four months, dated, respectively, on the 1st, 9th, 15th and 20th days of February, 1875, and each payable to the plaintiffs at the office of the defendants, in the City of New York, and indorsed by the plaintiffs; and that, on or about April 4, 1875, Strang represented to plaintiffs that his firm had not used, nor been able to use, those notes, because they were made payable at their office, and requested plaintiffs to lend them four other notes of the same amount, payable at the Metropolitan National Bank, in New York City, to be used in the place of those dated in February.

. There was also evidence tending to prove that the plaintiffs, relying upon the representation that the February notes had not been used, and that the defendants desired other notes to be used in their place, executed and delivered to the latter four other promissory notes, each at four months, for $4,850, $4,951.25, $4,860.30, and $4,970, respectively, dated 13th, 14th, 16th, and 20th of March, 1875, payable four months after date to their own order at the Metropolitan National Bank, New York, and by them indorsed; that, at the time defendants requested to be furnished with the notes last described, they had, in fact, discounted and put in circulation the February notes, whereby the plaintiffs, as makers and indorsers, were compelled to pay the same to the holders; that when Strang applied for the March notes, the defendants knew that they were insolvent, but that fact was not known to plaintiffs; that he made such representations and procured said notes with the intent to defraud the plaintiffs; and that the latter was compelled to pay such part of the March notes, as amounted, principal and interest, to the sum for which they obtained judgment below.

In the misrepresentations made by Strang to Lowrey & Bradner there was no active participation by his partners, the. Messrs. Holland. But it was proven that the proceeds of the notes last obtained from plaintiffs, as well as the proceeds of the February notes, all went into the business of Strang & Holland Brothers.

The present suit, brought to recover a judgment for the

amount plaintiffs were compelled to pay to *bona fide* holders of the March notes, proceeds upon the ground that the appellees have sustained damages by reason of the false and fraudulent representations made by Strang, on behalf of his firm, whereby the appellees were induced to execute and deliver to that firm the four notes dated in March, 1875. Is that claim for damages of the class from which the bankrupts were relieved by their respective discharges in bankruptcy?

In *Neal* v. *Clark*, 95 U. S. 704, 709, it was held that, looking to the object of Congress in enacting a general law by which the honest citizen might be relieved from the burden of hopeless insolvency, the term "fraud," in the clause defining the debts from which a bankrupt is not relieved by a discharge under the bankrupt act, should be construed to mean positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law, which may exist without the imputation of bad faith or immorality. This principle was affirmed in the recent case of *Hennequin* v. *Clews*, 111 U. S. 676, 682, where will be found a reference to the leading cases in this country and in England. Under this rule it is impossible to avoid the conclusion that the debt in question was created by positive fraud upon the part of Strang, representing his firm, if it be true—and the jury proceeded upon the ground that such was the fact—that he procured the notes, dated in March, by representing that the February notes had not been, and could not be, used by his firm, and that they desired other notes, so drawn as to be readily negotiated, to take their place, when, in fact, the February notes had been previously put into circulation by the firm, and had then become obligations upon which the appellees were liable to the holders. There is no pretence in the evidence that the course of business between Strang & Holland Bros. and the plaintiffs would have entitled the former to obtain the March notes, so long as those dated in February were outstanding obligations against the latter. Hence the necessity of deluding the plaintiffs by the false representation that the February notes had not been negotiated at the time the notes in question were obtained.

That representation—as the jury, in effect, found—was made with the intent to deceive the plaintiffs in reference to the actual state of things, and to induce them to do what defendants knew they would not otherwise have done, or been asked to do. If Strang's conduct does not constitute positive fraud, or fraud in fact, involving intentional wrong, it is difficult to conceive what circumstances would have amounted to fraud of that character.

It is contended, however, that as Strang & Holland Bros. were under a legal obligation, apart from any responsibility for the alleged fraudulent representations by Strang, to protect the plaintiffs against liability on the notes dated in March, the latter could have made a claim against the estates of the several bankrupts, for such amounts as they were compelled to pay on account of their being accommodation makers and indorsers; consequently, it is argued, the defendants are released, by their respective discharges in bankruptcy, from the present claim for damages. To this proposition there are two answers: 1. While the plaintiffs might have based their claim entirely upon the legal obligation of defendants to take up the notes at their respective maturities, they were not bound to waive their right to proceed against the defendants for damages on account of fraud in procuring their execution. This action is brought to recover damages for the deceit practised upon the plaintiffs. The claim here asserted is not one from which the bankrupts are protected by their discharges; for, it is not a claim provable against their estates in bankruptcy. Rev. Stat. §§ 5067–5072, inclusive, 5117, 5119. 2. But had the plaintiffs waived their right to claim damages specifically for the deceit practised upon them, and made a claim against the estate of the bankrupts based wholly upon their legal obligation to save plaintiffs harmless on account of their being the makers and indorsers of the notes in question, or if the present action had been based upon that obligation, and not upon the fraud committed by defendants, it would not follow that the defendants would be protected by their discharges in bankruptcy; for, the statute expressly declares that a discharge is subject, even in respect of claims provable in bankruptcy, to the limitation that no *debt*

*created by the fraud* of the bankrupt shall be discharged by the proceedings in bankruptcy, and that *a debt so created* may be proved, and the dividend thereon shall be a payment *on account of such debt*. Rev. Stat. §§ 5117, 5119. It is, therefore, clear that, whether the claim asserted by plaintiffs is regarded as one arising out of the deceit or fraud of the defendants, or as a debt created by their fraud, the discharges in bankruptcy do not constitute a defence.

The only other question to be determined is, whether the defendants, John B. Holland and Joseph Holland, can be held liable for the false and fraudulent representations of their partner, it being conceded that they were not made by their direction nor with their knowledge. Whether this action be regarded as one to recover damages for the deceit practised upon the plaintiffs, or as one to recover the amount of a debt created by fraud upon the part of Strang, we are of opinion that his fraud is to be imputed, for the purposes of the action, to all the members of his firm. The transaction between him and the plaintiffs is to be deemed a partnership transaction, because, in addition to his representation that the notes were for the benefit of his firm, he had, by virtue of his agency for the partnership, and as between the firm and those dealing with it in good faith, authority to negotiate for promissory notes and other securities for its use. Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business. *Stockwell* v. *United States*, 13 Wall. 531, 547–8; Story on Partnership, §§ 1, 102–3, 107–8, 166, 168; *Chester* v. *Dickerson*, 54 N. Y. 1; *Locke* v. *Stearns*,

1 Met. 560 ; *Lothrop* v. *Adams*, 133 Mass. 471 ; *Blight* v. *Tobin*, 7 Monroe, 612 ; *Durant* v. *Rogers*, 87 Ill. 508 ; Collyer on Partnership, Wood's Ed., §§ 446, 449–50 ; Lindley on Partnership, Ewell's Ed., § 302.

The judgment is                                      *Affirmed.*