Revised February 6, 2001

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 99-60904**

_____

**In the Matter of:
M.M. WINKLER & ASSOCIATES, BILL MORGAN, AND OKEE MCDONALD,**

Debtors.

**BRUNO DEODATI,**

Appellant,

**v.**

**M.M. WINKLER & ASSOCIATES, BILL MORGAN, AND OKEE MCDONALD,**

Appellees.

**Appeal from the United States District Court for the
Northern District of Mississippi**

February 1, 2001

Before JOLLY, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

At issue is whether a debtor whose partner committed fraud may discharge in bankruptcy the liability to the fraud victim. The bankruptcy and district courts held that 11 U.S.C. § 523(a)(2)(A) does not bar innocent partners from discharging fraud liability unless 1) they benefitted from the fraud; and 2) the perpetrator of the fraud acted in the ordinary course of partnership business. Fraud victim Bruno Deodati ("Deodati")

appeals.  We reverse and remand for entry of judgment in favor of appellant.

**FACTS**

The facts of this case are undisputed.  Bill Morgan, Okee McDonald, and Patsy McCreight formed the Mississippi accounting partnership M.M. Winkler and Associates ("Partnership").  Deodati became a client of McCreight.  Only McCreight worked on Deodati's file.

Deodati authorized the Partnership to buy and sell certificates of deposit on his behalf.  McCreight used the authorization to place Deodati's money in her personal bank account.  She generated fictitious income statements to conceal the fraud.  Morgan and McDonald ("the Innocent Partners") were unaware of the fraud and did not receive any of the stolen money individually or through the Partnership.

The Partnership did receive roughly $3,500 from Deodati for "accounting services rendered."  These services were related to certificate of deposit transactions and inflated tax returns that McCreight filed for Deodati.

Morgan discovered the fraud and reported it to Deodati. Deodati filed suit in state court.  In their answer, the Innocent Partners admitted to the vicarious liability imposed by law. Deodati filed an unopposed motion for partial summary judgment. The court granted the motion and imposed joint and several

2

liability against the Partnership and the individual partners for over $ 290,000. The $3,500 in accounting services was not part of this judgment. The Innocent Partners filed for bankruptcy under Chapter 7, and Deodati sought to prevent them from discharging this debt because it arose from fraud.

Citing *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1283 (5th Cir. 1992), the bankruptcy court applied a three-part test to determine whether the debt was nondischargeable under § 523(a)(2)(A), (4), and (6). It looked to 1) whether the Innocent Partners were partners with McCreight; 2) whether McCreight acted in the ordinary course of business of the Partnership; and 3) whether the Innocent Partners received a benefit from the fraud. The court, finding that Deodati failed to establish the second and third elements, permitted the Innocent Partners to discharge the debt. The district court affirmed.

## DISCUSSION

Deodati first argues that § 523(a)(2)(A) of the Bankruptcy Code bars the Innocent Partners from discharging the debt even if they did not benefit monetarily from the fraud. We agree.

Section 523 lists "Exceptions to discharge." It states:

(a) A discharge . . . does not discharge an individual debtor from any debt– . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

3

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The language of the statute includes no "receipt of benefit" requirement. The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefitted from the fraud. *See* Lawrence Ponoroff, *Vicarious Thrills*: *The Case for Application of Agency Rules in Bankruptcy Dischargeability Litigation*, 70 Tul. L. Rev. 2515, 2542 (1996) (arguing that § 523(a)(2) makes all debts that are the product of fraud nondischargeable). Thus, the plain meaning of the statute is that debtors cannot discharge any debts that arise from fraud so long as they are liable to the creditor for the fraud.

The Supreme Court did not require receipt of benefits in a similar case. *See Strang v. Bradner*, 114 U.S. 555, 561 (1885). The bankruptcy statute at the time barred discharge for a "debt created by the fraud or embezzlement of the bankrupt." *See id.* at 556. The Court stated that each partner was the agent and representative of the firm, and it imputed fraud by one partner to the innocent partners. *See id.* at 561. It stated, "[t]his is especially so when, as in the case before us, the [innocent partners] received and appropriated the fruits of the fraudulent conduct of their associate in business." *See id.* The Court barred the innocent partners from discharging the debt in bankruptcy. *See*

4

*id.*  *Strang* thus indicates that benefit to an innocent partner is an aggravating factor and not a requirement to impute nondischargeable fraud liability.

*Strang* is still good law.  In recent years, this circuit and others have relied on it to bar discharge on behalf of innocent debtors for a partner's fraud.  *See BancBoston Mortgage Corp. v. Ledford (In re: Ledford)*, 970 F.2d 1556, 1561 (6th Cir. 1992) (no dischargeability where debtor benefitted from partner's fraud); *Luce*, 960 F.2d at 1282.  Section 523(a)(2)(A) applies even more directly to innocent partners than the statute in *Strang*, since now the "bankrupt" need not perpetrate the fraud.

A more recent Supreme Court case also suggests that receipt of benefits is irrelevant to whether innocent debtors may discharge fraud liability.  In *Cohen v. de la Cruz*, the Court held that § 523(a)(2)(A) prevents debtors from discharging statutory and punitive fraud damages.  *See Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998).  The Court rejected a fraud perpetrator's contention that he could discharge any liability above the amount he received.  *See id.* at 222.  It held that "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge."  *Id.* at 218-19.  It relied on a "straightforward reading" of the statute and on legislative intent to make fraud victims whole.  *See id.* at 217-220.  *Cohen* indicates that whether the debt arises from fraud is

5

the only consideration material to nondischargeability. It also indicates that we should not read requirements like receipt of benefits into § 523(a)(2)(A) and that the discharge exceptions protect fraud victims rather than debtors.

This court's decision in *Luce v. First Equip. Leasing Corp. (In re Luce)*, 960 F.2d 1277, 1283 (5th Cir. 1992), is not necessarily inconsistent with *Cohen* and, in any event, is superseded by *Cohen* to the extent of any inconsistency. In *Luce*, a debtor tried to discharge imputed fraud liability because she was unaware of her partner/husband's fraud. Relying principally on the imputed partnership liability discussion in *Strang*, the court held that Mrs. Luce was responsible under § 523(a)(2)(A) regardless of her knowledge or involvement. *See Luce*, 960 F.2d at 1282.

Mrs. Luce also argued that the discharge exception did not apply because she never actually obtained money for herself by fraud. *See id.* at 1283. The court stated,

> [t]he test under section 523(a)(2)(A), however, is not whether the debtor actually procured the money, property, services or credit for him or herself. 3 Collier on Bankruptcy § 523.08[1] (15th ed. 1991). Rather, the Code dictates that a particular debt is nondischargeable '[i]f the debtor benefits in some way" from the money, property, services or credit obtained through deception.' *Century First Nat'l Bank v. Holwerda (in re Holwerda)*, 29 B.R. 486, 489 (Bankr. M.D. Fla. 1983) (holding that debtor who was a principal of a corporation "'obtained money" within the meaning of § 523(a)(2)'" when the creditor approved a loan to the corporation).

*Id*. The court then rejected this argument because Mrs. Luce shared in the fraud proceeds through the Luce partnership.

The court was not creating a receipt of benefit test. There was no question that Mrs. Luce had indirectly benefitted through the partnership. Mrs. Luce was making the distinct argument that she could discharge the debt unless she directly obtained money for herself through fraud. *See Holwerda*, 29 B.R. at 489 (discussing a line of cases that supports this view, but ultimately rejecting the argument). The court rejected Mrs. Luce's argument by observing that even an indirect benefit is sufficient. It cited *Holwerda* and Collier § 523.08[1], which reject distinctions between direct and indirect benefits. *See Holwerda*, 29 B.R. at 489; 4 Collier on Bankruptcy § 523.08[1] (rev. 15th ed. 2000). In *Holwerda*, for instance, the debtor who was a corporate principal "obtained money" within § 523(a)(2) when the creditor lent money to the corporation.

While *Luce* does not discuss pure imputed liability among partners, its finding of an indirect benefit is consistent with a recognition that a partnership that actually benefits from a fraud inherently benefits its members. As in *Strang*, the presence of some personal, albeit indirect benefit supplemented but was not a precondition for Mrs. Luce's imputed partnership liability.

*Luce*, therefore, stands at least for the proposition that where a partner's fraud benefits the *partnership*, all other

7

partners necessarily receive a benefit from the fraud. To the extent that *Luce* does not specifically hold that a partner is deemed to benefit even absent a showing of actual benefit to the partnership, that gap is amply filled by the Supreme Court's superseding decision in *Cohen*.

The Sixth Circuit has nonetheless interpreted *Luce* to establish a receipt of benefit test. In *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1561 (6th Cir. 1992), an innocent partner received fraud proceeds through a partnership and sought to discharge liability. The court understood *Luce* to bar innocent debtors from discharging imputed fraud debts when: 1) the debtor and perpetrator of the fraud are partners; 2) the perpetrator acts in the ordinary course of partnership business; and 3) the innocent debtor receives a benefit from the fraud. It "adopted" this analysis, and held that § 523(a)(2)(A) prevented the innocent partner from discharging the debt because he received a benefit. *See id.* at 1561.

The Eleventh Circuit has also cited receipt of benefits in a case that did not involve imputed partnership liability. The debtor perpetrated the fraud but did not directly benefit from it. The court barred dischargeability of the debt because the debtor indirectly benefitted from the fraud. *See HSSM # 7 Ltd. Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 890, 891 (11th Cir. 1996); *see also In re Ashley*, 903 F.2d 599, 604 (9th Cir.

8

1990) (holding that a non-partner benefitted indirectly from his fraud in a case that preceded *Luce*). Like the benefits passage in *Luce*, these cases reject the idea that a perpetrator of fraud can discharge liability unless she directly benefits from it.

*Ledford* and *Bilzerian* may be distinguishable because those debtors did benefit from fraud, and *Bilzerian* did not involve a partnership. To that extent, both cases were narrowly written and simply did not decide whether innocent debtors who did not benefit monetarily from fraud might discharge imputed partnership liability.

Confronted with this precise question, we hold that §523(a)(2)(A) prevents an innocent debtor from discharging liability for the fraud of his partners, regardless whether he receives a monetary benefit. A rational legislator might conclude that an innocent debtor should be able to discharge debts in these situations, but § 523(a)(2)(A) does not permit this. The plain meaning of the statute, fortified by the Supreme Court's decisions in *Strang* and *Cohen*, argues against a receipt of benefit requirement. We have no warrant to add elements to bankruptcy statutes. *See Toibb v. Radloff*, 501 U.S. 157, 166 (1991) (relying on plain meaning to reject an implicit "ongoing business" requirement for Chapter 11 debtors even though the structure and legislative history of the statute suggested one).

For similar reasons, the bankruptcy court erred in adding an "ordinary course of business" requirement in § 523(a)(2)(A) imputed partnership liability cases.[1] Mississippi law requires this element to impute fraud to partners, *see* Miss. Code Ann. § 79-12-27, but the element is not part of § 523(a)(2)(A). The Bankruptcy Code gives no indication that the debt must arise in the ordinary course of business.

Nor did *Luce* create such a requirement. No existing state court judgment in that case established the debt, so the bankruptcy court made its own fact findings. *See Luce*, 960 F.2d at 1280. It found that Mrs. Luce's partner acted in the course of business as a basis for imputed liability. Mrs. Luce argued that this finding of fact was clearly erroneous, and the court responded by observing that her partner did act in the course of business. *See id.* at 1282-83. The court was refuting Mrs. Luce's factual argument, not adding an element to § 523(a)(2)(A).

Finally, it is worth noting the limits of the maxim that exceptions to dischargeability are to be construed narrowly in favor of the debtor. *See Fezler v. Davis*, 194 F.3d 570, 573 (5th Cir. 1999) (describing the maxim). This maxim cannot overcome the plain language Congress used to define exceptions from dischargeability. In § 523(a)(2)(A), Congress chose, as *Cohen*

---

[1] *Strang* mentions "in the conduct of partnership business" in its discussion of imputed liability, not its discussion of bankruptcy discharge. *See Strang*, 114 U.S. at 561.

10

says, to protect <u>victims</u> of fraud. Further, Congress's choice of words effectuates important state law policies regarding imputed liability. Discharging the debts of the Innocent Partners under these circumstances would undermine that principle. Like many states, Mississippi "requires that one partner make good for another partner's misappropriation of money or property while in the custody of the partnership." *Duggins v. Guardianship of Maurice Kendall*, 632 So. 2d 420, 427 (Miss. 1993). States premise these laws on the notion that partners can best foresee and control the conduct of their agents. *See* Lawrence Ponoroff, *Vicarious Thrills*: *The Case for Application of Agency Rules in Bankruptcy Dischargeability Litigation*, 70 Tul. L. Rev. 2515, 2542 (1996). Creditors are entitled to rely on the assets of the Innocent Partners "as a hedge against the perfidy of the agent with whom the creditor deals." *See id*. at 2549. This system of risk allocation and cost internalization would be subverted by allowing the Innocent Partners to discharge their fraud liability.

We conclude that if a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is nondischargeable under § 523(a)(2)(A). Receipt of benefits and the ordinary course of business are irrelevant to this inquiry

11

as matters of federal law.  The bankruptcy court erred by requiring these elements in this case.[2]

Because of the effect of the state court judgment, there is no question that the debt to Deodati arose from fraud and that the Innocent Partners are liable.  Section 523(a)(2)(A) prevents them from discharging this debt.   We need not address Deodati's § 523(a)(4) and (6) arguments.  We REVERSE and REMAND for entry of judgment in Deodati's favor consistent with this opinion.

**REVERSED** and **REMANDED** with Instructions.

---

[2]      To the extent that *Ledford* relies on *Luce* to create a three-part test for imputed partnership liability under § 523(a)(2)(A), we cordially disagree with its interpretation.