IN RE Joseph PALILLA, Debtor(s).

Aaron Chenaille, Plaintiff(s),

v.

Joseph Palilla, Defendant(s).

**Bankruptcy Case No. 11–24809 EEB**
**Adversary Proceeding No. 12–1092 EEB**

United States Bankruptcy
Court, D. Colorado

May 28, 2013

Jesse Aschenberg, 4610 S. Ulster St., Ste. 150, Denver, CO 80237, for Debtor.

Chapter 7

**ORDER**

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER comes before the Court on Plaintiff's Second Amended Complaint, alleging a debt owed by Debtor to Plaintiff should be nondischargeable under 11 U.S.C. § 523(a)(4). Following trial on this matter, the Court finds and concludes that Debtor's obligation to Plaintiff is nondischargeable.

## I. BACKGROUND

The facts of this case center around a business called Autohut, which sold used cars on a consignment basis in Englewood, Colorado. Autohut was not formed as a separate legal entity. Rather, Debtor and an individual named Lowell Andrews formed a common law partnership to run the business. The partnership agreement

between Mr. Andrews and Debtor was informal and unwritten. Under the agreement, Mr. Andrews ran the day-to-day operations of Autohut with little to no involvement by Debtor, and Debtor invested at least $10,000 in the business.

Although Mr. Andrews did not testify at trial, there was evidence presented that he generated business for Autohut by contacting individuals who were selling their cars on Craigslist or a similar public listing. He offered to sell their vehicles on consignment basis from Autohut's lot. Autohut would charge these individuals a fee of $500, which was collected at the time of sale, and which was detailed in a signed a contract.

Plaintiff was a customer of Autohut. In 2011, he attempted to purchase a used Ford F350 truck ("Truck") from Autohut's lot. He negotiated a price of $6,800 with Mr. Andrews and made a down payment of $6,400, with the remainder due within 90 days. Although Plaintiff took possession of the Truck after making the down payment, he never received the title. When Plaintiff later returned to Autohut to pay the remaining purchase price, he discovered that Autohut had completely shut down and its lot was empty. Plaintiff contacted the police and learned that he was not alone in his predicament. Numerous consignors had lost their consigned vehicles, never receiving the purchase price that buyers had paid Autohut. Many buyers never received a title for their vehicles. The Colorado Motor Vehicle Dealer Board ultimately shut down Autohut's business and revoked its business license. However, no charges were ever brought against Autohut or its owners.

Subsequently, Plaintiff was contacted by the seller of the Truck, Jarred Johnson. Mr. Johnson had initially listed the Truck for sale on Craigslist and was contacted by Mr. Andrews, who convinced him to sign a contract to sell the Truck on Autohut's lot for $11,000. Although Plaintiff paid Mr. Andrews $6,400 for the Truck, Mr. Andrews did not tell Mr. Johnson of the sale and never forwarded the funds to Mr. Johnson. Mr. Johnson retained the title to the Truck. After Autohut was shut down, Mr. Johnson filed a police report because he considered the Truck stolen. He learned from the police that Plaintiff had possession of the Truck. After negotiations failed, Mr. Johnson sued Plaintiff in state court for return of the Truck. The state court ultimately awarded ownership of the Truck to Mr. Johnson. Plaintiff was never refunded the $6,400 he paid for the Truck.

At trial, the Court heard testimony from three other customers who had either tried to sell or purchase an auto, with Autohut as the consignee, with similar results. All of them dealt with Mr. Andrews, who either failed to deliver title to the auto purchased or sale proceeds for the auto sold. There was also hearsay testimony that a total of seventy Autohut customers were victimized by Mr. Andrews' conduct. Mr. Andrews subsequently disappeared and apparently cannot be located. Debtor testified that he knew nothing of, and did not participate in, the problems at Autohut, which testimony the Court found to be credible. Once he was contacted by the Motor Vehicle Dealer Board, he fully cooperated with them and voluntarily surrendered Autohut's license. Debtor ultimately lost thousands of dollars dealing with the fallout from Mr. Andrews' activities.

In this proceeding, Plaintiff alleges the debt owed to him for the lost $6,400 purchase price and other related damages are nondischargeable in Debtor's bankruptcy case pursuant to § 523(a)(4). Plaintiff concedes that it was the conduct of Mr. Andrews, and not that of Debtor, that resulted in his loss. Nevertheless, Plain-

tiff argues that Debtor should be held vicariously liable for the debt. Debtor disputes that vicarious liability is applicable to § 523(a)(4) claims and argues it would be unfair to hold him responsible for Mr. Andrews' conduct.

Plaintiff's claim raises two interrelated issues. First, does the debt owed to Plaintiff meet the requirements of embezzlement under § 523(a)(4). Second, assuming this to be the case, can Mr. Lowell's embezzlement be imputed to Debtor for purposes of nondischargeability.

## II. DISCUSSION

### A. Embezzlement

■ Section 523(a)(4) provides that a debtor is not discharged from "any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Nondischargeability under § 523(a)(4) may rest on proof of embezzlement or larceny without requiring proof of a fiduciary relationship. *See Klemens v. Wallace (In re Wallace),* 840 F.2d 762, 765 (10th Cir.1988). Both claims have similar elements. The main difference between larceny and embezzlement is that with embezzlement, the debtor initially acquires the property lawfully, whereas larceny requires that the funds originally come into the debtor's hands unlawfully. *Bombardier Capital, Inc. v. Tinkler (In re Tinkler),* 311 B.R. 869, 876 (Bankr.D.Colo.2004). An embezzlement claim has five elements: "1. Entrustment (property lawfully obtained originally); 2. Of property; 3. Of another; 4. That is misappropriated (used or consumed for a purpose other than that for which it was entrusted); 5. With fraudulent intent." *Bryant v. Tilley (In re Tilley),* 286 B.R. 782, 789 (Bankr.D.Colo. 2002). Plaintiff has the burden to establish each element by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S.

279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

There can be little dispute that the first four elements have been satisfied. The Debtor entrusted his funds with Autohut. The purchase price was not used for the purpose it was entrusted—to purchase the Truck. Mr. Andrews did not forward the funds to Mr. Johnson nor refund them to Debtor.

■ The final element of an embezzlement claim is intent. The Tenth Circuit has held that a claim for embezzlement under § 523(a)(4) "requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." *Driggs v. Black (In re Black),* 787 F.2d 503, 507 (10th Cir.1986); *see also Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1877) (holding that embezzlement requires "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality."). Based on this language, this Court and others in this circuit have held that embezzlement requires a showing of "fraudulent" intent. But this fraudulent intent is not identical to the type required for actual fraud or fraudulent misrepresentation under § 523(a)(2). Rather, embezzlement requires *"animus furandi"* or intention to steal. *See Bryant v. Lynch (In re Lynch),* 315 B.R. 173, 181 (Bankr.D.Colo.2004); 3 Charles E. Torcia, *Wharton's Criminal Law* § 385 (15th ed. 1993) ("To constitute embezzlement, the property must generally be appropriated or converted with the intent permanently to deprive.").

■■ In this case, there was no direct evidence of Mr. Andrew's intent, as he was not present at trial. Intent can be inferred, however, from the surrounding circumstances. *Isaacs Cars, Inc. v. Woods*

*(In re Woods)*, 418 B.R. 226, 231 (Bankr. W.D.Ky.2009). Those circumstances are that Mr. Andrews engaged in a pattern of activity whereby he took either sale proceeds or automobiles from Autohut customers and failed to deliver those funds and autos as promised. For cars he was purportedly selling on behalf of Autohut customers, Mr. Andrews would sell the auto for less than the agreed purchase price, not inform the customer of the sale, and not forward the sale proceeds to the seller. For autos he sold to Autohut customers, he would take the purchase monies but not deliver title to the purchaser. These were not isolated events. Mr. Andrews misappropriated the property of approximately seventy Autohut customers.

What Mr. Andrews did with the proceeds of his activities is not entirely clear. Debtor argues that notations Mr. Andrews made on various customer contracts as to amounts owed shows Mr. Andrews intended to pay the funds back. However, there is no evidence that Mr. Andrews made any efforts to return funds or to even contact Autohut customers to provide an explanation. Instead, Autohut customers testified that Mr. Andrews withheld important information from them, such as the fact that he had sold a vehicle and pocketed the proceeds. Moreover, Debtor could provide no explanation of where the missing proceeds went, despite being the owner of Autohut's business bank account. Autohut's bank records show that Mr. Andrews frequently used the business account to pay personal expenses, such a travel, food and strip clubs. *See* Plaintiff's Ex. 8. Based on these circumstances, the Court concludes that Mr. Andrews acted with intention to steal when he misappropriated Plaintiff's funds. Accordingly, Plaintiff has established Mr. Andrews embezzled the funds he paid for the Truck. The question remains whether Debtor is vicariously liable for this debt such that it is nondischargeable under § 523(a)(4).

**B. Vicarious Liability**

**1. Applicability in § 523 Actions**

The seminal case concerning vicarious liability in the nondischargeability context is *Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885). In that case, three individual members of a partnership had each filed for personal bankruptcy. One of the partners had made fraudulent misrepresentations to a customer of the partnership, without the knowledge of the other two partners. The Supreme Court held that, under nonbankruptcy partnership law, the actions of the guilty partner where imputed to the innocent partners because the guilty partner had been acting as an agent of the partnership with authority to conduct such business on its behalf. *Id.* at 561, 5 S.Ct. 1038. Since the innocent partners were vicariously liable for the debt and that debt was for fraud, the Court concluded that the elements of § 523(a)(2)'s predecessor statute were met and that the debt was nondischargeable in the innocent partners' bankruptcies. *Id.* (construing § 33 of the Bankruptcy Act of 1867).

Justice Harlan's opinion in *Strang* appears at first blush to contradict with his earlier opinion in *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877), which held that a debtor's constructive fraud was insufficient to make a debt nondischargeable under the predecessor to § 523(a)(2)(A). Rather, the *Neal* Court held that the " 'fraud' referred to that section means positive fraud, or fraud in fact, involving ... intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Id.* at 709. This seems at odds with *Strang*, since vicarious liability could be categorized as a type of "implied fraud," which

does not require bad faith on the part of the innocent partner.

One commentator has suggested that you can harmonize the holdings of *Strang* and *Neal* by focusing on the differing nature of the secondary liability at issue in the two cases. *See The Dischargeability of "Control Person" Liability for Federal Securities Fraud: Actual Fraud, Vicarious Nondischargeability, and the Vacillating Objects of the 523(a)(2)(A) Discharge Exception*, Bankr.L. Letter, 2002 WL 1022151, at *8 (May 2002) [hereinafter Bankr.L. Letter]. Both decisions stand in deference to nonbankruptcy law when determining whether to impose vicarious liability for fraud. Some nonbankruptcy laws, such as the state partnership law implicated in *Strang*, are compensatory in nature and impose vicarious liability on certain parties who may not themselves have been guilty of fraud, but because of their position, the law favors compensation of the victim over the protection of the nonactor. In partnership law, vicarious liability is imposed on partners who vest a partner with authority to act for them, even to the extent of imputing fraud liability. *Strang v. Bradner*, 114 U.S. 555, 561, 5 S.Ct. 1038, 29 L.Ed. 248 (1885). On the other hand, in *Neal v. Clark*,

> [t]he debtor's liability ... was not based upon a purely vicarious/compensatory liability regime; applicable nonbankruptcy law imposed liability for the executor's fraudulent misconduct on Neal only upon a showing of some level of misconduct by Neal (gross negligence). Neal's liability, therefore, was at least partially founded upon culpability, and the holding of *Neal v. Clark*, is simply that the only level of culpability that gives rise to a nondischargeable debt is "positive fraud ... involving ... intentional wrong."

Bankr.L. Letter, 2002 WL 1022151, at *8. In other words, where the debtor's liability under applicable nonbankruptcy law is purely vicarious/compensatory, then § 523(a)(2) defers to that compensatory state law policy and makes a debtor's purely vicarious fraud debt nondischargeable. However, when nonbankruptcy law requires direct liability, then § 523(a)(2) also requires evidence of the debtor's own fraudulent actions or statements. *Id.*

As added support for application of vicarious liability in nondischargeability actions, commentators have also pointed out that the Supreme Court in *Strang* was interpreting the predecessor of § 523(a)(2) found in the Bankruptcy Act of 1867. *See* W. Brian Memory, *Vicarious Nondischargeability For Fraudulent Debts: Understanding the Dual Purposes of § 523(A)(2)(a)*, 20 Emory Bankr.Dev. J. 633, 643–44 (2004). That section excepted from discharge any "debt created by the fraud or embezzlement *of the bankrupt*." *Strang*, 114 U.S. at 556, 5 S.Ct. 1038 (quoting statute). Even though the phrase "of the bankrupt" could be interpreted to require direct liability on the part of the debtor, the *Strang* Court nevertheless applied vicarious liability. Following *Strang*, Congress amended the Code such that the current versions of § 523(a)(2) and (a)(4) lack any such limitation and instead refer generally to the nondischargeability of a "debt" for fraud (in the case of § 523(a)(2)) or a "debt" for embezzlement (in the case of § 523(a)(4)). This is in contrast to § 523(a)(6), which excepts from discharge debts "for willful and malicious injury *by the debtor*." 11 U.S.C. § 523(a)(6) (emphasis added). Neither § 523(a)(2) nor § 523(a)(4) explicitly require the fraud or embezzlement which caused the debt be committed *by the debtor*. This change in language offers additional support for imposing vicarious liability in connection with certain discharge exceptions. *See Securi-*

*ties Investor Protection Corp. v. Rounds (In re Rounds)*, Ch. 7 Case No. 09–10676 ABC, Adv. No. 09–1220 ABC, slip op. at 24 (Bankr.D.Colo. Aug. 6, 2010).

The Tenth Circuit has not spoken on this issue, but a majority of courts have adopted the reasoning of *Strang* (despite *Neal*) to impute the wrongful conduct of one party to an innocent debtor for purposes of nondischargeability when state law imposes vicarious liability. *See, e.g., Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746, 751 (5th Cir.2001) (holding that a debt incurred through the fraud of one business partner was nondischargeable by innocent partners liable for the debt under state partnership law); *BancBoston Mortgage Corp. v. Ledford*, 970 F.2d 1556, 1561 (6th Cir.1992) (holding that an obligation based on a partner's fraud was nondischargeable by a debtor although the debtor neither knew of nor ratified his partner's fraud); *Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa)*, 287 B.R. 515, 525–27 (9th Cir. BAP 2002) (holding that in a § 523(a)(2) action, one spouse's fraud may be imputed to the other spouse under agency principles when they are also business partners). This Court agrees with the majority of courts that *Strang* is both controlling law and may be harmonized with *Neal v. Clark*.[1]

### 2. Debtor's Vicarious Liability

 Under Colorado law, a partnership is "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Colo.Rev.Stat. § 7–64–202(1). It is also defined as "an express or implied contract between two or more persons to place their money, skill, effects or labor into a business, and to share the profit and losses." *Larsen v. Consolidated Pet Foods, Inc. (In re S & D Foods, Inc.)*, 144 B.R. 121, 158 (Bankr.D.Colo.1992). No written agreement is required. *Id.* It may be formed by the conduct of the parties. *Id.* Thus, although it was never formalized, a general partnership existed between Debtor and Mr. Andrews.

 As to vicarious liability, the Colorado Uniform Partnership Act provides that a partnership is liable for any loss or injury caused "as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." Colo.Rev.Stat. § 7–64–305(1). The Act also contains a specific provision concerning misappropriated funds:

> If, in the course of the partnership's business or while acting with authority of the partnership, a partner receives or causes the partnership to receive money or property of a person not a partner, and the money or property is misapplied by a partner, the partnership is liable for the loss.

Colo.Rev.Stat. § 7–64–305(2). This provision "imposes strict liability on the partnership for the misapplication of money or property received by a partner in the course of the partnership's business or otherwise within the scope of the partner's actual authority." Unif. Partnership Act § 305 (1997) cmt. to § 305(b). Partners

---

1. The holding of *Neal* was recently reaffirmed by the Supreme Court in *Bullock v. BankChampaign, N.A.,* —— U.S. ——, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013). In *Bullock*, the Supreme Court held that a defalcation claim under § 523(a)(4) requires a showing of intentional wrong, as is the case for an embez- zlement claim. The *Bullock* case, however, did not involve vicarious liability and did not address the holding of *Strang*. Because *Bullock* essentially restates the holding of *Neal*, it can be harmonized with *Strang* for all the reasons discussed above.

are jointly and severally liable for all partnership obligations. Colo.Rev.Stat. § 7–64–306(1). Thus, a partner may be held liable for another partner's embezzlement of funds, despite the fact that the innocent partner had no knowledge of or participation in the guilty partner's activities. *See SIPC v. Murphy (In re Selheimer & Co.),* 319 B.R. 395, 406 (Bankr.E.D.Pa. 2005) (holding partnership liable for partner's embezzlement of client funds); *Official Comm. of Unsecured Creditors v. Ganz (In re Summit Airlines, Inc.),* 160 B.R. 911 (Bankr. E.D.Pa. 1993) (same).

■ Here, it is undisputed that Mr. Andrews was acting in the ordinary course of Autohut's business when he accepted payment for the Truck from Plaintiff. Mr. Andrews was also acting with authority of Debtor, as Debtor admits he gave Mr. Andrews the authority to run Autohut's day-to-day business. Certainly, Debtor did not give Mr. Andrews authority to steal funds from Autohut customers. But that is not relevant question. Rather, what matters is whether the Mr. Andrews had authority to accept customer funds. *See In re Selheimer & Co.,* 319 B.R. at 407 (noting that the doctrine of apparent authority would be "eviscerated" if it depended on proof that the principal gave an agent license to steal). And the records shows Mr. Andrews had such authority. It matters not that Debtor was unaware of Mr. Andrews' felonious conduct. Colorado law places liability on Debtor for his partner's activities. Thus, under *Strang,* Debtor is liable for Mr. Andrews' embezzlement and that embezzlement debt is nondischargeable in Debtor's bankruptcy case pursuant to § 523(a)(4).

■ Debtor argues this Court should adopt limitations on vicarious liability that have been recognized in other circuits. For example, a small minority of courts, primarily in the Eighth Circuit, refuse to apply vicarious liability except where there is proof that the debtor was recklessly indifferent to the acts of the guilty party. *See Walker v. Citizens State Bank of Maryville, Mo. (In re Walker),* 726 F.2d 452, 454 (8th Cir.1984). These courts hold that vicarious liability applies only if the debtor knew or should have known of the guilty party's fraud. *Id.* This Court, however, finds no basis for such a requirement. Nothing in *Strang,* supports the existence of an element of reckless indifference. Moreover, reckless indifference is not an element of vicarious liability under Colorado partnership law. Even the Eighth Circuit appears to be backing away from this stance. *See Reuter v. Cutcliff (In re Reuter),* 686 F.3d 511, 518 (8th Cir.2012) ("We note that a requirement of recklessness appears to contravene controlling authority established by the Supreme Court in *Strang.*"). Thus, this Court declines to impose such a requirement under the circumstances of this case.

Debtor also argues that vicarious non-dischargeability should only apply if he received some benefit from Mr. Andrews' embezzlement. There is some dispute in the case law as to whether vicarious liability in the context of § 523 requires proof that debtor benefited the wrongdoer's activity. This purported requirement is based on language in *Strang,* where the Supreme Court concluded that the debtor could not escape vicarious liability of the guilty partner's wrongdoing, and that this was "especially so when ... the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business." *Strang,* 114 U.S. at 561, 5 S.Ct. 1038. Some courts interpret this language as requiring proof of a benefit received by the debtor. *See BancBoston Mortgage Corp. v. Ledford,* 970 F.2d 1556, 1561–62 (6th Cir.1992) (holding vicarious liability

applied because, like in *Strang,* the innocent partners received the fruits of the fraudulent conduct). Other courts reject a "receipt of benefit" requirement. *See Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.),* 239 F.3d 746, 749 (5th Cir.2001) ("The language of the statute includes no "receipt of benefit" requirement.").

■ This Court agrees with the Fifth Circuit that there is no "receipt of benefit" requirement to apply vicarious liability in the context of § 523. *See In re M.M. Winkler & Assocs.,* 239 F.3d at 749; *Securities Investor Protection Corp. v. Rounds (In re Rounds),* Ch. 7 Case No. 09–10676 ABC, Adv. No. 09–1220 ABC, slip op. at 24–25 (Bankr.D.Colo. Aug. 6, 2010) (concluding that *Strang* does not impose such a requirement). The *Strang* Court's use of the words "especially so" indicates to this Court that the receipt of benefits is an aggravating factor and not a requirement to impute nondischargeable fraud liability. *See In re M.M. Winkler & Assocs.,* 239 F.3d at 749. Furthermore, there is no "receipt of benefits" requirement for vicarious liability under Colorado partnership law. The "receipt of benefits" requirement has also been rejected in § 523 actions not involving vicarious liability. *See Nat'l Dev. Servs., Inc. v. Denbleyker (In re Denbleyker),* 251 B.R. 891, 896 (Bankr. D.Colo.2000) (finding the "receipt of benefits" requirement impermissibly conflicts with the Supreme Court's more recent and expansive interpretation of the language and policy of the provision in *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998)). Thus, the Court declines to apply such a requirement in this case.

The Court acknowledges the unfairness of this result. It is often said the discharge is reserved for the honest-but-unfortunate debtor, thus implying that the purpose of § 523 is to punish only the less-than-honest debtor. In this case, it appeared to the Court that Debtor was indeed an "honest-but-unfortunate" debtor, who has been forced to deal with the misdeeds of his business partner. While the Court sympathizes with Debtor's unfortunate position, granting a discharge is not solely about an honest debtor's fresh start. As one commentator has pointed out, § 523 also has compensatory objectives which aim to protect certain types of creditors regardless of the debtor's culpability. Lawrence Ponoroff, *Vicarious Thrills: The Case for Application of Agency Rules in Bankruptcy Dis-chargeability Litigation,* 70 TUL. L. REV. 2515, 2555 (1996). It is "the intrinsic nature of the debt, not the debtor's lack of rectitude or impoverishment, that establishes nondischargeability of specific individual debts." *Id.*

This goal was recognized by the Supreme Court in the more recent case of *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), which held that § 523(a)(2)(A) prevents a debtor from discharging statutory and punitive fraud damages. *Id.* at 220, 118 S.Ct. 1212. The Court rejected the debtor's argument that nondischargeability should be limited to only those amounts he actually received through his fraud. *Id.* at 219–20, 118 S.Ct. 1212. Instead, the Cohen Court held that "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge." *Id.* at 218, 118 S.Ct. 1212. In so holding, the *Cohen* court relied on a "straightforward reading" of the statute and the legislative intent behind § 523(a)(2) to make fraud victims whole. *Id.* at 221–22, 118 S.Ct. 1212. The same could be said of § 523(a)(4)—it has a compensatory goal of making embezzlement victims whole. This compensatory goal is served by giving deference to state vicari-

ous liability principles, despite the Debtor's lack of direct culpability.

## III. CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff demonstrated all elements of embezzlement under § 523(a)(4) and that vicarious liability applies. Accordingly, the debt owed to Plaintiff is nondischargeable in Debtor's case pursuant to § 523(a)(4). Plaintiff's closing argument indicates that Plaintiff lost the $6,400 he paid for the Truck as well as other damages including missed work and attorney fees. The Plaintiff, however, did not present any evidence of damages other than the purchase price. Accordingly, the Court orders that $6,400, plus applicable post-judgment interest, and less any other amounts collected postpetition, is nondischargeable.