# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 09-6023

_____

In re:  Larry Weldon Treadwell;     *
Carole Elaine Treadwell,     *
   *
     Debtors.     *
   *
Larry Weldon Treadwell; Carole     *  Appeal from the United States
Elaine Treadwell,     *  Bankruptcy Court for the Western
   *  District of Missouri
     Plaintiffs – Appellees,     *
   *
       v.     *
   *
Glenstone Lodge, Inc.,     *
   *
     Defendant – Appellant.     *

_____

Submitted: December 18, 2009
Filed: February 1, 2010

_____

Before  KRESSEL, Chief Judge, MAHONEY  and  SALADINO,  Bankruptcy
Judges.

_____

KRESSEL, Chief Judge.

Glenstone Lodge appeals from the bankruptcy court's order[1] avoiding its judicial lien on the debtors' home and determining the underlying debt to be dischargeable. We affirm in part and reverse in part.

BACKGROUND

Carole and Larry Treadwell are married. Carole runs Memory Travel, a travel agency. Memory Travel is not incorporated. Larry and Carole consider themselves to be co-owners of the business because they are married and share equally in "everything."

Carole is a member of the Red Hat Society, Inc., a social organization for women over the age of fifty. Members are known for their flamboyant red hats and refer to themselves as "redhatters." In early 2005, Carole began organizing an event in Gatlinburg, Tennessee for redhatters. Although the event was not an official Red Hat Society event, Carole used the corporation's logos on her advertisements and in her correspondence.

In April of 2005, Carole contacted the Gatlinburg Department of Tourism for assistance in selecting facilities for the event. The Department sent a sales lead to area hotels, including Glenstone Lodge, Inc. Claudette Geoffrion, the former director of sales at Glenstone, contacted Carole with a proposal and Carole selected Glenstone for the redhatter event's accommodations. For the next several months, Carole and Claudette frequently exchanged e-mails and talked on the phone. Together they made arrangements for guest accommodations as well as for entertainment and activities for the redhatter event, which included a Hawaiian luau, a fifties-themed sock hop dinner, day trips, and a pajama breakfast.

In a May 5, 2005 e-mail, Carole told Claudette that each redhatter would make her reservation through Carole, and that Carole would then pay Glenstone

---

[1] *Treadwell v. Glenstone (In re Treadwell)*, 411 B.R. 636 (Bankr. W.D. Mo. 2009).

2

"via one check." In June of 2005, Carole signed an initial contract with Claudette for 150 rooms for April 20-23, 2006. Carole paid the required $250 deposit. The contract provided that the first night's room and tax would be paid in March 2006 when Carole submitted a list of room assignments. The balance was to be paid at check-in on April 20, 2006. Carole then advertised the Gatlinburg trip to the redhatters, who responded enthusiastically.

In October of 2005, Carole realized that she had undercharged the redhatters for the Gatlinburg event. She knew that she had made a serious mistake in her estimation of the costs of entertainment, decorations, transportation and other incidentals. Carole knew she would not be able to satisfy the Glenstone bill for the event, and all representations she made about the bill from that time on were knowingly false. She continued to receive some prepayments and deposits from the redhatters, but used the funds to pay for other trip-related expenses such as the entertainers.

In January of 2006, Carole took $10,000 from the redhatters' deposits to pay for her mother's funeral expenses. That same month, Carole and Larry visited Glenstone and made further arrangements for the event with Claudette and other staff members.

Carole did not make the required payment in March when she submitted her list of room assignments. The bankruptcy court found that Glenstone had, for some reason, waived the contractual requirement. On April 20, 2006, the Treadwells and the redhatters arrived. The contract required that the balance due be paid at check-in, but Carole obtained another waiver. By April 24, 2006, the last day of the event, Memory Travel had not paid anything to Glenstone except for the initial $250 deposit. However, Carole collected about $20,000 from the redhatters during the event and had hoped to collect additional deposits from the redhatters in anticipation of future events. The Treadwells left on Monday, April 24, 2006 without checking out, paying the outstanding charges, or notifying Glenstone staff of their departure. The bill was over $60,000.

On Monday, April 24, Glenstone staff contacted Carole about her failure to pay the bill. Carole responded by email on April 26, stating that she had turned the bill over to her bookkeeper and that she would pay it after some minor adjustments were made. Carole did not have a bookkeeper. On April 26, Carole sent a $20,000 check from the Treadwell Family Revocable Living Trust's bank account by overnight delivery as partial payment. On April 27, when Glenstone told her they had not received the check, she wired $15,000 to Glenstone and promised that she would immediately send a $5,000 check as well. She asked Glenstone not to deposit the $20,000 check. Glenstone did not receive the $5,000 check so it attempted to deposit the $20,000 check. However, Carole had issued a stop payment on the $20,000 check. Carole made no other payments to Glenstone following the wire transfer.

Glenstone sued the Treadwells and the Treadwell Family Revocable Living Trust in state court in Sevier County, Tennessee, asserting: (i) fraud pursuant to § 62-7-107(b) of the Tennessee Code; (ii) violations of the Tennessee Consumer Protection Act; (iii) conversion; (iv) breach of agreement; (v) fraud, promissory fraud, mail and wire fraud; and (vi) violation of various provisions of the Tennessee Code based on the stop payment of the $20,000 check. Glenstone also named The Red Hat Society, Inc. as a defendant. The Red Hat Society, Inc. filed a cross-claim against the Treadwells and denied any involvement in the event. Glenstone dismissed The Red Hat Society, Inc. as a defendant. The Treadwells and the Treadwell Family Revocable Living Trust failed to answer, and the Chancery Court for Sevier County, Tennessee awarded treble damages and entered a default judgment against them in the amount of $153,611.44 plus costs. Glenstone registered the judgment against the Treadwells in Missouri, thereby creating a lien against the Treadwells' residence.

On August 27, 2008, the Treadwells filed a chapter 7 bankruptcy petition. On September 18, 2008, the Treadwells initiated this adversary proceeding against Glenstone, seeking to avoid Glenstone's judicial lien on their home. Glenstone answered and counterclaimed against the Treadwells, seeking a determination that

4

the Treadwells' debt to it was nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6).

The court held a trial on April 22 and 23, 2009. The Treadwells and Glenstone employees Urcella House and Rita Marshall testified. Claudette Gioffrion, who would have been the most knowledgeable about Glenstone's communications with the Treadwells, did not testify. On June 16, 2009, the court issued a memorandum opinion and order directing judgment in favor of the Treadwells. The bankruptcy court found that the judicial lien was avoidable pursuant to 11 U.S.C. § 522(f)(1) and that the Treadwells' debt to Glenstone was not excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. Kaelin v. Bassett (In re Kaelin),* 308 F.3d 885, 888 (8th Cir. 2002); *Bauer v. Iannacone (In re Bauer),* 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003). "[A] finding is 'clearly erroneous' when although there is evidence to support it . . . the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *U.S. v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

## DISCUSSION

A. Dischargeability

A discharge under 11 U.S.C. § 727 does not discharge an individual debtor for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false

representation or actual fraud." 11 U.S.C. § 523(a)(2)(A). [2] In order to prevail under § 523(a)(2)(A) on the basis of actual fraud, a creditor must prove: "(1) the debtor made a false representation; (2) at the time the representation was made the debtor knew it was false; (3) the debtor subjectively intended to deceive the creditor at the time he made the representation; (4) the creditor justifiably relied upon the representation; and (5) the creditor was damaged." *Fee v. Eccles (In re Eccles)*, 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009). The bankruptcy court found that Glenstone had established all of the elements of actual fraud and false pretenses as to Carole except for one: justifiable reliance. [3] The Treadwells do not challenge those findings. As to Larry, the bankruptcy court found that Glenstone had not established three elements: knowledge of falsity, subjective intent to deceive *or* justifiable reliance.

1. Justifiable Reliance Is a Lower Standard than Reasonable Reliance; There Is No Duty to Investigate

The Supreme Court has held that the standard to be applied to exceptions to discharge for actual fraud under 11 U.S.C. § 523(a)(2)(A) is "justifiable reliance," which is a lower standard that "reasonable reliance," and entails no duty to investigate. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995). The Supreme Court examined the history of § 523(a)(2)(A) and concluded that "false pretenses, a false representation, or actual fraud" are terms of art referring to common law torts. *Id*. The Court therefore looked to the Restatement (Second) of Torts and

---

[2] Glenstone also sought a determination of nondischargeability under 11 U.S.C. § 523(a)(4), for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny, and § 523(a)(6), for willful and malicious injury. The bankruptcy court found that § 523(a)(4) did not apply and that there was no basis to conclude that Carole had acted with intent to harm under § 523(a)(6). Glenstone does not challenge those parts of the bankruptcy court's decision.

[3] The parties do not challenge the bankruptcy court's treatment of false pretenses as distinct from actual fraud under § 523(a)(2)(A), but rather dispute only the court's findings of fact and application of law regarding whether Glenstone's reliance was not justified.

Prosser's Law of Torts for guidance on the appropriate standard. *Id.*; *see also Waring v. Austin (In re Austin)*, 317 B.R. 525 (B.A.P. 8th Cir. 2004); *Guske v. Guske (In re Guske)*, 243 B.R. 359 (B.A.P. 8th Cir. 2000).

According to the Restatement (Second) of Torts, "The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."  Rest. 2d Torts § 540.  An example from the Restatement illustrates the principle:

> . . . if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand . . .  a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.

*Field* at 71, 116 S.Ct. 444 (quoting Rest. 2d Torts § 541, Comment a).  The Supreme Court also made the following observation, quoting § 545A from the Restatement:

> Here a contrast between a justifiable and reasonable reliance is clear: "Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."

*Field* at 70-71, 116 S.Ct. 444.  Although Glenstone's reliance may not have been reasonable, it certainly was justifiable under the minimal standard articulated by the Supreme Court.  The bankruptcy court clearly erred in finding that because Glenstone failed to investigate Memory Travel's ability to pay for the redhatters event, its reliance was not justifiable.

The circumstances demonstrate justifiable reliance by Glenstone. The sales lead came from the Gatlinburg Department of Tourism, and identified the event as the "Tennessee Redhatters 2006 Spring Event," which implied some sort of association with the national organization. For months prior to the event, Carole worked with Claudette Gioffrion of Glenstone on every detail. They e-mailed frequently, discussing not only the event but also Carole's other events, her mother's cancer, and then her mother's passing. As early as May of 2005, Carole had made clear to Glenstone that she intended to pay with one check and that she preferred all registrations to go through her. Claudette apparently found that acceptable. It was the hotel's policy to accommodate every group as much as possible. In an e-mail on June 14, 2005, Carole apologized for not getting the deposit to Claudette on time, but said that she could not pay the deposit "until all things are settled and we are sure we are ready to go." Again, Claudette accommodated her. At some point, Claudette came to view Carole as a friend, as demonstrated in one of her last e-mails to Carole, dated April 25, 2006: "I still think you are my friend, will you please contact us???" It was undisputed that when Glenstone staff asked Carole during the event about payment, she answered that she intended to pay with a single check after they had finalized the numbers. Glenstone did in fact make a number of changes to the bill during and immediately after the event. At all times, it appeared to the parties that the event was going to be very successful, with nearly all of the rooms booked months in advance. All of these facts indicate that Glenstone's reliance was justifiable.

However, it is true that "The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." Rest. 2d Torts § 541. We noted that principle when we said:

> Although [the plaintiff] was not required to conduct any investigation as to the truth of the Debtor's representation by signing the consent decree that he intended to pay the money, the evidence indicates that there were "obvious warning signs" of its falsity, namely, that he told her he would not pay it.

8

*Guske*, 243 B.R. at 363. This case does not involve obvious warning signs of falsity, and the bankruptcy court found no evidence that an investigation would have unearthed proof of the fraud. The bankruptcy court did not find any evidence that Carole had told Claudette that she did not intend to pay. Rather, the court found that Carole repeatedly obtained waivers of the usual payment terms. Repeated requests to postpone payment, without more, do not rise to the level of obvious warnings sign of falsity.

There is a "red flag" exception, as noted earlier, for extreme situations such as the one-eyed horse or where a debtor tells the creditor he will not be able to repay his debt. Glenstone made a bad business decision in allowing the redhatter event to proceed without prepayment. Glenstone apparently accepted Carole's explanation that she wanted to pay with one check after all issues with the bill had been resolved. It was not obvious to the Glenstone staff until after the event that Carole had deceived them about her ability to pay, but of course it would have been too late at that point for Glenstone to take any preventative measures.

The bankruptcy court observed that there was no evidence that Glenstone conducted a background or credit check on Memory Travel or the Treadwells. Although it held that Glenstone should have conducted an investigation, the bankruptcy court found no evidence that a background or credit check would have alerted Glenstone to Memory Travel's inability to pay. If Glenstone had investigated Carole and Memory Travel, it might not have uncovered anything alarming. During at least some of the time prior to the event, Carole appears to have had a positive cash flow. It was not until January of 2006 that Carole used event funds to pay for her mother's funeral, and she continued to receive payments from the redhatters the weekend of the redhatter event. It was undisputed that Carole had previously arranged other travel events, and the court found no evidence that she had engaged in similarly fraudulent activity in the past.

"The rationale for placing this relatively low burden on the victim of the misrepresentation is rooted in the common law rule that the victim's contributory

negligence is not a defense to an intentional tort." *Sanford Institution for Savings v. Gallo,* 156 F.3d 71, 74 (1st Cir. 1998) (citing Restatement (Second) or Torts § 540, 541 cmt. a (1976)). "In such circumstances, the equities weigh in favor of giving the benefit of the doubt to the victim, careless as it may have been, and even though it could have been more diligent and conducted an investigation." *Id.* The bankruptcy court found that Carole intentionally deceived Glenstone. Glenstone is entitled to have Carole's debt to it excepted from her discharge despite the fact that its employees made an enormous mistake by trusting her. We reverse the bankruptcy court's determination.

2. Larry Treadwell's Debt Is Dischargeable

We agree with the bankruptcy court's determination that Larry's debt to Glenstone is dischargeable, even though Glenstone proved justifiable reliance. "On appeal, [. . .] we may affirm the bankruptcy court's decision on any basis supported by the record." *Sells v. Porter (In re Porter)*, 375 B.R. 822, 828 (B.A.P. 8th Cir. 2007). The bankruptcy court only made the following findings of fact regarding Larry: 1) "Larry and Carole Treadwell are equal owners in a travel agency business known as Memory Travel"; and 2) "As to Larry, although it is likely that he was also aware that they did not have the money to pay the bill, there was no actual evidence of that fact. Consequently, although I find that Larry made implied representations about payment, unlike Carole, I cannot find that his representations were knowingly false." The bankruptcy court did not find that Larry and Carole were partners.

It is highly unusual to hold a debt nondischargeable under 11 U.S.C. § 523(a)(2) where the debtor is only vicariously liable and has not participated in the fraud. Glenstone argues that the Eighth Circuit has held that a partnership's liability under § 523(a)(2)(A) may be imputed to its agent or partner even in the absence of evidence that the agent or partner knowingly participated in the fraud. The case cited by Glenstone is factually and legally inapposite. *See Owens v. Miller (In re Miller)*, 276 F.3d 424 (8th Cir. 2002). Miller was the chairman of the

board for Andover Securities, a securities brokerage firm licensed by the National Association of Securities Dealers. While Miller was chairman, Andover employed Bohling as a vice president. Bohling managed the investments of steel mill retirees and their spouses. Bohling invested the retirees' funds in speculative investments, which ultimately failed, costing the retirees most of their savings. Bohling was found to have engaged in fraudulent conduct that violated the Securities Exchange Act. At the time, Miller had indications that Bohling was engaged in fraud, but had allowed him to continue the practices. Miller knew or should have known of the securities violations but did nothing to stop him. Miller filed a voluntary petition, and the retirees filed an adversary proceeding, seeking a determination of nondischargeability under 11 U.AS.C. § 523(a)(2)(A).

In the *Miller* case, the court decided the narrow issue of whether the bankruptcy court had incorrectly excepted the debt to the retirees from the debtor's discharge under § 20(a) of the Securities Exchange Act of 1934, which "renders an innocent person's debt nondischargeable when a person over whom the innocent person exercised control committed actual fraud." *Miller* at 429. The court concluded that the bankruptcy court erred by imputing Bohling's fraud to Miller under § 20(a) of the Securities Exchange Act because the Bankruptcy Code does not contain a specific exception to discharge for securities law violations. The court discussed the Supreme Court's *Strang* decision and concluded that under *Strang*, the common law of agency and partnership could be applied to "impute the fraud of an innocent debtor's business partner to that debtor and so render his debt nondischargeable." *Id*. (discussing *Strang v. Bradner*, 114 U.S. 555, 5 S.Ct. 1038 (1885)). However, the court did not read *Strang* as providing a basis for broadening the scope of § 523 to include liability under the Securities Exchange Act.

The appellants misread the *Miller* case, which is not relevant to the Treadwells except that it concludes that *Strang* is still good law. In *Strang*, the Supreme Court held that a general partner's fraud may be imputed to all of the

members of his firm under agency and partnership principles. The Court concluded:

> Each partner was the agent and representative of the firm with reference to all business within the scope of the partnership. And if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge. This is especially so when, as in the case before us, the partners, who were not themselves guilty of wrong, received and appropriated the fruits of the fraudulent conduct of their associate in business.

*Strang* at 561, 5 S.Ct. 1041. Under *Strang*, partnership liability must be established *first* in order to hold the innocent partner's debt nondischargeable. The bankruptcy court in this case did not fully analyze the formalities of the Memory Travel partnership because it was not necessary for its holding, but if it had, the record would not have supported a finding that Larry was a partner in Carole's travel business.

Memory Travel is not a limited liability partnership or corporate entity. Therefore, if it is a partnership at all, it would be a general partnership, subject to Missouri law on partnerships. However, there is no evidence of an actual partnership. Larry had no authority to control the business, did not believe himself to be a business partner, had no authority to act on behalf of the business, and apparently did nothing except help out at events, travel with Carole, and add his two cents about entertainment and logistics simply because he was there. Carole forged Larry's name on the fictitious name registration. His ownership interest was described by the Treadwells as a marital interest.[4] In other words, because the

---

[4] A marital relationship is insufficient to establish partnership or agency in order to hold a debtor liable for his spouse's fraud for nondischargeability

Treadwells share equally in everything, they considered Larry to be a fifty percent owner of the business, just as he was a fifty percent owner of the household furnishings. Carole rarely, if ever, talks to him about their income or expenses. He testified that he never pays any bills for the household or Memory Travel. Larry's name does not appear anywhere on the Glenstone Rooms Contract. Carole's e-mails do not suggest that anyone is helping her run the business. There is no evidence that Larry received a share of the profits, if there ever were any. There is no evidence that Larry ever represented to Glenstone that he was Carole's business partner. The record would not support a finding of partnership or agency.

There is no factual support for Glenstone's argument that *Miller* and *Strang* provided a basis for the bankruptcy court to except Larry's debt from his discharge under partnership or agency principles. In fact, Eighth Circuit case law indicates the opposite. In the *Walker* case, the Eighth Circuit analyzed the nondischargeability of an innocent spouse's debt under § 523(a)(2)(A) and concluded that "more than the mere existence of an agent-principal relationship is required to charge the agent's fraud to the principal. [. . .] If the principal either knew or should have known of the agent's fraud, the agent's fraud will be imputed to the debtor-principal." *Walker v. Citizens Bank of Maryville, Miss. (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984). The *Walker* court analyzed the imputed liability issue as follows:

> Proof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud. If the debtor was recklessly indifferent to the acts of his agent, then the fraud may also be attributable to the debtor-principal. [. . .] The debtor who abstains from all responsibility for his affairs cannot be held innocent for the fraud of his agent if, had he paid minimal attention, he would have been alerted to the fraud.

purposes; rather, there must be an agency or partnership. *Accord Allison v. Roberts (In re Allison)*, 960 F.2d 481, 485-86 (5th Cir. 1992).

*Id.* (internal citations omitted). Under *Walker*, even if there had been evidence that Memory Travel was a partnership, it still would not be enough to support the nondischargeability of Larry's debt. Glenstone would have had to prove that Larry knew of Carole's fraud, should have known of Carole's fraud, or was recklessly indifferent to Carole's fraud, and the record does not support that finding. The bankruptcy correctly concluded that there was no evidence that Larry knew of the fraud.

Finally, the appellants argue in their brief that *Walker's* knowledge requirement was limited by *Miller*: "The *Miller* Court did not impose any type of knowledge requirement on the innocent debtor. The *Miller* court's absence of any such discussion and a Fifth Circuit case [. . .] support this conclusion." However, the *Miller* court was merely summarizing the general rule on imputed liability for a partner's fraud, while the *Walker* court actually dealt with the issue of imputed liability under agency principles and articulated the circumstances under which a principal's liability for his agent's fraud may create a nondischargeable debt. The *Miller* court's silence does not suggest that it was limiting *Walker* but rather that it did not reach that issue.

In conclusion, there is no legal basis for imputing Carole's fraud to Larry under either partnership or agency principles. Although Larry and Carole considered Larry to be an equal owner of Memory Travel, and although he accompanied Carole on both the initial site visit and the redhatter event, the evidence overwhelmingly supports the conclusion that he was oblivious to the operations of the business, merely tagged along with Carole at her request and helped out at her direction. The record would not support a finding that Larry and Carole had a partnership or agency relationship, or that Larry knowingly participated in the fraud or should have known of the fraud. We therefore affirm the bankruptcy court's determination that Larry's debt to Glenstone is dischargeable.

B. Lien Avoidance

Section 522(f)(1)(A) provides, ". . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . ., if such lien is—(A) a judicial lien." Under § 522(f)(2)(A), a lien is considered to impair an exemption to the extent that "the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." The debtors have elected the Missouri state exemptions. Missouri law provides a $15,000 homestead exemption to be shared by spouses. Mo. Rev. Stat. § 513.475 (2008). Glenstone's only argument on appeal is that the bankruptcy court erred "in finding that the judgment lien created by the imposition of a judgment as to a non-dischargeable debt would not become a lien on the debtors' residence as a new post-petition lien and in avoiding the existing judgment lien of Glenstone Lodge beyond $15,000." Glenstone's argument regarding "a new post-petition lien" is simply incorrect. There is no "new post-petition lien." There is one prepetition lien, which is either avoidable or it is not. Glenstone's argument mischaracterizes the court's findings on lien avoidance, which were limited to the following:

> Although the parties disputed what effect, if any, a finding of nondischargeability would have on the lien avoidance issue, Glenstone Lodge has agreed that, due to the value of the Treadwells' home and the amount of the secured debt, its judgment lien would be avoidable if the debt were found to be dischargeable. Consequently, since I have found that the debt is dischargeable, Glenstone Lodge's judicial lien on the Treadwells' home will be avoided pursuant to § 522(f)(1).

*Treadwell*, 411 B.R. at 650. The dischargeability of a loan is irrelevant to the avoidance of a lien under § 522(f)(1) and § 522(f)(2)(A). In order to determine whether a lien is avoidable pursuant to § 522(f)(1), a bankruptcy court must apply the statutory formula provided in § 522(f)(2)(A). "Section 522(f)(2)(A) is a

15

congressionally mandated bright line formula for determining how to calculate the extent to which a judicial lien impairs an exemption." *Kolich v. Antioch Laurel Veterinary Hosp., Inc. (In re Kolich),* 273 B.R. 199, 206 (B.A.P. 8th Cir.2002), *aff'd* 328 F.3d 406 (8th Cir. 2003). The dischargeability of the underlying debt is therefore not a basis for avoiding or not avoiding the lien under § 522(f)(2)(A). We affirm the bankruptcy court's avoidance of Glenstone's lien.

## CONCLUSION

For the reasons stated, we reverse the bankruptcy court's determination that Carole Treadwell's debt to Glenstone was dischargeable, affirm the bankruptcy court's determination that Larry Treadwell's debt to Glenstone was dischargeable, and affirm the bankruptcy court's avoidance of Glenstone's lien.