# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 09-6065

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Svetlana Sergeyevna Ungar, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Olim Islamov, | * | |
| | * | |
| Plaintiff - Appellee. | * | Appeal from the |
| | * | United States |
| v. | * | Bankruptcy Court for the |
| | * | District of Nebraska |
| Svetlana Sergeyevna Ungar, | * | |
| | * | |
| Defendant - Appellant. | * | |

---

Submitted: April 15, 2010
Filed: May 21, 2010

---

Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

Svetlana Sergeyevna Ungar (the "Debtor") appeals from an order of the bankruptcy court[1] excepting the debts owed by the Debtor to Olim Islamov (the "Creditor") from the Debtor's bankruptcy discharge and entering a money judgment for the amount owed. We have jurisdiction over this appeal from the final order and judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUES

The issues on appeal are whether the bankruptcy court properly: (1) excepted the debt owed by the Debtor to the Creditor from the Debtor's discharge; and (2) entered a money judgment in the amount of $228,791.00. We agree with the bankruptcy court's decisions to except the debt from the Debtor's discharge under section 523(a)(2)(A) of Title 11 of the United States Code (the "Bankruptcy Code") and to enter a money judgment.

## BACKGROUND

This matter came before the bankruptcy court for trial on the complaint filed by the Creditor, seeking *inter alia* to except certain debts owed to him by the Debtor from discharge under sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. The relevant facts are as follows.

The Creditor emigrated to the United States from Tajikistan and the Debtor emigrated to the United States from Moldova. They both live in Nebraska and they met in 2002. Both parties spoke fluent Russian, and they conversed in that language. In 2003, the Debtor began telling the Creditor about her stock market day-trading activities.

---

[1] The Honorable Thomas L. Saladino, Chief United States Bankruptcy Judge for the District of Nebraska.

2

The Creditor graduated from an economics university in Moscow. He worked in various jobs in the former Soviet Union, including as an auditor for the Ministry of Foreign affairs and a finance director for a scientific industrial association, and he formed his own company to conduct market research and facilitate trade. The Debtor graduated from Doane College in Crete, Nebraska. She worked at several jobs in Nebraska, including as a vocational counselor, bookstore manager, investment operations assistant, computer operator and driver/warehouse assistant.

At trial, the Creditor testified about the relationship between the parties, but the Debtor did not testify to rebut his statements. According to the Creditor, in response to the Debtor's offer to day trade on his behalf, the Creditor gave the Debtor $25,000.00 to invest for him. Thereafter, he regularly delivered funds to the Debtor for the same purpose. The funds that the Creditor delivered to the Debtor were comprised of his own funds, including advances on his credit cards, and funds from his friends and family. The Debtor placed the funds in her own Ameritrade account, and she purchased and sold stocks through her Ameritrade account.

The parties' characterization of their arrangement differs. At a deposition, the Debtor claimed that the transactions were a loan or a series of loans and that she was free to use the money as she wished. The Creditor characterized the transactions as investments. He testified that each month the Debtor was to pay him the interest owed on the credit card debt he had incurred to invest with the Debtor. He understood that the parties would split the profits from the day-trading. As stated above, the Debtor did not testify at trial to rebut the Creditor's testimony.[2]

---

[2]    The characterization of the transactions as loans or investments does not change the result of this matter and, accordingly, we need not decide whether the transactions were loans or investments.

The Debtor regularly provided the Creditor with detailed reports regarding the profits that were being made on the Ameritrade account. The unrebutted testimony and evidence at trial revealed that after the first few months of the Creditor's investment, the amount of profit and account balance reported by the Debtor greatly exceeded the actual profit and account balance. The Creditor testified that he continued to invest with the Debtor based on the Debtor's false reports of profits and account balances, which he believed to be true at the time. The Creditor acknowledged that part of the risk of investing in the stock market is that the investment could be lost. However, he explained at trial that he had instructed the Debtor that he did not want his principal investment to be at risk and, accordingly, she should stop investing if there were losses on the account.

Until 2007, the Creditor continued to forward funds to the Debtor based on the false, but favorable, reports prepared by the Debtor. The Debtor returned to the Creditor a portion of the amount of money that the Creditor gave to the Debtor. According to the Creditor, part of the money that the Debtor returned to him was a return of principal and another part was a repayment of the interest on the credit card debt that he incurred to obtain funds to invest with the Debtor. In 2007, the Creditor stopped investing with the Debtor when he learned that there was no money in the Debtor's Ameritrade account. He also learned that all of the money he had given to the Debtor to invest was either spent by her or lost in the stock market.

After the Creditor stopped forwarding funds to the Debtor for her day-trading activities, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court held a trial on the merits of the Creditor's complaint and entered an order and judgment, holding that the amount of $228,791.00 owed from the Debtor to the Creditor is non-dischargeable in the Debtor's bankruptcy case. The bankruptcy court examined the undisputed facts and determined that the elements of fraud were satisfied. Specifically, the bankruptcy court explained that the Debtor initially induced the Creditor to invest with her by promising him a profit.

Thereafter, she induced him to continue forwarding funds to her by showing documentation of alleged earnings on the account, which were false representations to him about the value of the account and the profit made on his investment. It explained that the Creditor's reliance was justifiable in light of his knowledge of the risks involved with investing in the stock market and the representations that the Debtor made to him.

Next, to determine the amount of the non-dischargeable debt, the bankruptcy court noted that part of the $503,791.00 that the Creditor delivered to the Debtor to invest for him was returned to the Creditor over the years. It explained that that the Creditor testified that a certain portion of the amount returned was paid to reimburse the Creditor for interest on his credit card borrowings, rather than repaying the principal amount of his investment. Accordingly, the bankruptcy court entered judgment in favor of the Creditor in the amount of $228,791.00.

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir. 1997); *Merchs. Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). Whether a requisite element of a claim under Section 523(a)(2)(A) is present is a factual determination that is reviewed for clear error. *R & R Ready Mix v. Freier (In re Freier)*, __ F.3d __, 2010 WL 1838379, at *3 (8th Cir. May 10, 2010)(*citing Pontow*, 111 F.3d at 609). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (*quoting U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). We give due regard to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

**DISCUSSION**

The bankruptcy court correctly determined that the debts owed from the Debtor to the Creditor were excepted from discharge in the Debtor's bankruptcy case and entered a judgment for the specific amount of the debt that represented money obtained by fraud.

## Dischargeability

Exceptions to discharge are usually "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279 (1991). "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an 'honest but unfortunate debtor.'" *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998)(internal citation omitted).

### Section 523(a)(2)(A)

Bankruptcy Code Section 523(a)(2)(A) excepts certain debts from discharge. It provides, in pertinent part, that a discharge:

> does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. §523(a)(2)(A).

A creditor's success in a non-dischargeability action for actual fraud under Section 523(a)(2)(A) requires that creditor to prove, by a preponderance of the evidence, that: (1) the debtor made a false representation; (2) at the time the representation was made, the debtor knew it was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained loss and damage as a proximate result of the misrepresentation. *Field v. Mans,* 516 U.S. 59, 74 (1995)(justifiable reliance)*; Grogan*, 498 U.S. at 291 (burden of proof)*; Moen,* 238 B.R. at 790 (elements of proof under section 523(a)(2)(A))(citations omitted).

The justifiable reliance element of fraud is at issue in this appeal. Specifically, we consider whether the bankruptcy court erred when it determined that the Creditor was justified in relying on the Debtor's initial promise of a profit and continuing representations that the day-trading activities were earning the Creditor a profit when, in fact, the Ameritrade account balance was significantly less than the Debtor represented it to be.

The Supreme Court set forth a minimal standard of justifiable reliance in cases for actual fraud under Bankruptcy Code section 523(a)(2)(A). *Field*, 516 U.S. 59. Justifiable reliance is a lower standard than reasonable reliance. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell),* 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010)(*citing Field*, 516 U.S. 59). Even when an investigation would have revealed the falsity of the representation, reliance may be justifiable. *Freier*, __ F.3d __, 2010 WL 1838379, at *4 (*citing Field,* 516 U.S. at 74-75). "[A] creditor 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Freier*, __ F.3d __ , 2010 WL 1838379, at *4 (*citing Field,* 516 U.S. at 71)(*quoting* RESTATEMENT (SECOND) OF TORTS § 541 cmt. a (1976)).

The bankruptcy court did not err when it accepted the Creditor's testimony and determined that the Creditor justifiably relied on the Debtor's representations. The record demonstrates that the parties established a relationship of trust. In fact, the Creditor so trusted the Debtor's self-described trading acumen that he obtained money from his friends and relatives to use in the Debtor's day-trading activities. Over the course of years, the Debtor continuously submitted false information to the Creditor about the balance of the Ameritrade account and the purported profits he was earning. The information provided by the Debtor was detailed. In addition, on various occasions, the Debtor returned money to the Creditor. The Creditor relied on the Debtor's false statements of the account balance and profitability of the trades, her return of funds to him and the trust that he believed they had established. He had no duty to investigate whether the Debtor's representations were correct. No "red flags" were raised.

The Debtor claims that the Creditor could not have justifiably relied on her representations because the Creditor was aware of the risks involved with investing in the stock market. We will not disturb the bankruptcy court's finding that, based on his knowledge of the risks involved with investing in the stock market and the representations that Debtor made to him, the Creditor's reliance was justifiable. As the bankruptcy court recognized, the Debtor's argument misses the mark. The transactions between the parties included a series and pattern of misrepresentations by the Debtor that resulted in numerous deliveries of funds from the Creditor to the Debtor, not only the Creditor's initial $25,000.00 investment. There was no reason why the Creditor should have known that the Debtor was submitting inaccurate information to him.

**Section 523(a)(6)**

Based on our decision that the debts owed from the Debtor to the Creditor were non-dischargeable under Bankruptcy Code section 523(a)(2)(A), we do not need to

8

consider whether the same debts were excepted from the Debtor's discharge under section 523(a)(6).  *Stabler v. Beyers (In re Stabler)*, 418 B.R. 764, 766 n. 2 (B.A.P. 8th Cir. 2009)("[t]he Panel may affirm on any basis supported by the record")(*citing Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1193-94 (8th Cir. 1998)).

## **Money Judgment**

We first address the Debtor's argument that the bankruptcy court exceeded its jurisdiction when it awarded a money judgment to the Creditor.  According to the Debtor, the bankruptcy court could not enter a money judgment because the Creditor's complaint only sought a judgment of non-dischargeability and it did not seek a money judgment.  We reject the Debtor's argument.  We agree with the courts that have held that bankruptcy courts have jurisdiction to liquidate debt and enter money judgments in dischargeability actions.  *See, e.g., Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793-94 (10th Cir. 2009)(collecting circuit court cases); *In re Asbury*, 408 B.R. 817, 823 (Bankr. W.D. Mo. 2009).  In fact, in response to the Debtor's attempt to bar the Creditor from garnishing the Debtor's wages to collect the amount of the bankruptcy court's judgment entered by the bankruptcy court, the district court disallowed the Debtor's collateral attack on the bankruptcy court's judgment and noted that "[w]ithout question, the bankruptcy court is vested with the authority to enter money judgments as between creditors and bankruptcy petitioners." *Islamov v. Ungar*, No. 4:09CV3229, 2009 WL 4340343 (D. Neb. Nov. 24, 2009).

The Debtor cannot escape the fact that she recognized the Creditor's request for a money judgment by extensively litigating the amount of the judgment at trial.  Moreover, the record shows that the purpose of the complaint was to obtain a money judgment if the debt was found to be non-dischargeable.  There is simply no room left for the Debtor to claim that the bankruptcy court lacked jurisdiction to enter a money judgment.

In addition to the jurisdiction issue, the Debtor also argued that if the debt was non-dischargeable, the amount of the money judgment should be less than the amount of $228,791.00 that was awarded by the bankruptcy court. According to the Debtor, the bankruptcy court should not have adopted the Creditor's contention that part of the sum of money returned by the Debtor to the Creditor represented interest on the Creditor's credit card and, therefore, did not count toward repayment of the Creditor's principal investment.

The bankruptcy court acted properly when it awarded the Creditor damages in an amount that would make him whole. *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998)("[o]nce it has been established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge"). As the bankruptcy court explained, the Debtor did not dispute the Creditor's testimony that a certain amount of the funds that the Debtor returned to the Creditor represented the payment for interest on the Creditor's credit card. It did not find any documentary evidence to suggest otherwise. The Creditor's undisputed testimony was that the Debtor was to pay him the interest owed on the credit card debt he incurred to obtain money to invest with the Debtor. It should not be a surprise to the Debtor that part of her payment to the Creditor would count toward the Creditor's credit card interest, rather than repayment of the principal investment.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.

10